Filed 4/28/16  In re Xavier H. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re XAVIER H., a Person Coming Under the Juvenile Court Law. | B268769 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>BREANNA N. et al.,<br><br>        Defendants and Appellants. | (Los Angeles County Super. Ct. No. CK89112) |

APPEAL from orders of the Superior Court of Los Angeles County, D. Zeke Zeidler, Judge.  Affirmed.

Julie E. Braden, under appointment by the Court of Appeal, for Defendant and Appellant Breanna N.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant George H.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Brian Mahler, Associate County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Breanna N. and George H. separately appeal from the order of the juvenile court terminating their parental rights to five-year-old Xavier H. (Welf. & Inst. Code, § 366.26.)[1] George contends that the juvenile court abused its discretion in summarily denying his petition for modification (§ 388). Breanna contends that the juvenile court erred in declining to apply the parental-relationship exception to adoption to avoid terminating her parental rights. (§ 366.26, subd. (c)(1)(B)(i).) We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Family History*

Breanna has a drug history and a record of arrests for drug-related criminal activity. She used methamphetamines, cocaine, or anything "to get high." Breanna's parents, the N.s, are the legal guardians of her older two sons, Brayan T. and Brandon T., who were dependents of the juvenile court based on Breanna's general neglect and absence.[2] Xavier was a dependent of the juvenile court in 2011 because Breanna was found by the police to be under the influence of drugs and begging for money with four-month-old Xavier in tow. Breanna regained custody of the child after undergoing a drug treatment program, only to move with one-year-old Xavier to a drug dealer's home. At the N.s' insistence, Breanna and child moved in with the N.s and did well for a year.

George also has a history of drug abuse. He additionally has a long criminal history that includes multiple convictions for domestic violence, drug-related crimes, robbery, and burglary. He has been a registered controlled substance offender as of May 2014. He was incarcerated in 2011 on a three-year sentence for drug-related offenses.

---

[1]    All further statutory references are to the Welfare and Institutions Code, unless otherwise noted.

[2]    Brayan T. and Brandon T. are not at issue in this appeal.

2. *Xavier was declared a dependent of the juvenile court in the spring of 2014.*

Mr. N. called the Department of Children and Family Services (the Department) to report that Breanna had been taking three-year-old Xavier with her to buy and use drugs but had vanished ten days earlier leaving the child with the N.s. Mr. N. reported that Breanna stole anything she came across. Breanna also had pending court hearings involving theft charges. Concluding that Xavier was at a "VERY HIGH risk of future abuse and neglect" and that his safety was of immediate concern because of Breanna's ongoing drug use and the child's age, the Department detained Xavier and filed a petition in April 2014 naming Breanna only. (§ 300, subds. (b) & (g).) The juvenile court detained Xavier and placed him with the N.s.

George was released from prison in the spring of 2014 but his whereabouts were unknown. George did not visit Xavier.

After the child's detention, Breanna visited Xavier roughly twice a week. She did not always schedule visits in advance and the N.s reported having difficulty redirecting Breanna when she appeared unannounced. Breanna "only kind of pa[id] attention to the child Xavier" during visits.

In June 2014, Breanna was arrested in front of the children during a visit. The Department filed an amended petition alleging that Breanna had an unresolved history of drug abuse, was a registered controlled substance offender with a criminal history of drug-related convictions, and in March 2014, left Xavier without making an appropriate plan for the child's care and supervision. The petition also contained a count alleging George had a criminal history and was a registered controlled substance offender. (§ 300, subds. (b) & (g).)

In July 2014, the parents' car was stopped by the police for a traffic violation. The officers cited George for driving with a license that had been suspended after a conviction for driving under the influence, and arrested Breanna for possession of methamphetamines and a pipe.

At the jurisdiction hearing in August 2014, the juvenile court declared Xavier a dependent (§ 300, subds. (b) & (g)), removed him from his parents' custody (§ 361,

3

subd. (c)), and placed him with the N.s. The court awarded the parents random, monitored visits with the possibility of liberalization. As reunification services, the court ordered the parents to participate in weekly drug and alcohol testing, individual counseling, and parenting classes. The court ordered Breanna to undergo a full drug and alcohol program with aftercare, and George to comply with his probation terms, but if any of his drug tests were missed or produced positive results, George would have to enter a full drug rehabilitation program with weekly random testing.

3. *The six-month review period was marked by parental incarceration and minimal compliance with the case plans.*

Breanna missed five drug tests between July 23, 2014 and September 2, 2014. The record contains no evidence of negative test results during this period. She had monitored visits with Xavier two days a week for two hours each, during which the child stayed close to his grandmother. Breanna went to jail after the jurisdiction hearing and was not released until February 2015, five months later. After her release from jail, mother did not begin any rehabilitation program or respond to the Department's attempts to contact her.

George also went to prison during this period. He was released in October 2014 but did not contact the Department until December 2014. In January 2015, George claimed to have completed a three-month in-patient drug rehabilitation program a few months earlier. He also claimed to have enrolled in parenting education classes and individual counseling sessions, and to have moved into a sober living facility where he was required to submit to random drug testing. Testing was also a condition of his probation. Despite these claims of compliance with his case plan, George never provided the Department with evidence. Nor did he appear for four scheduled drug tests between January 12, 2015 and March 11, 2015.

The social worker arranged a schedule for monitored visits for George, who had not seen Xavier since the child's detention in April 2014. Although the visits were to occur once a week for an hour beginning in early January 2015, they did not commence until March 2015 because Mr. N. protested George's exposure to Xavier, the child was ill

4

one day, and George missed a visit because of work. Then, George was re-arrested two months later in mid-May 2015, nine months into the reunification period.

Meanwhile, Xavier was meeting age-appropriate milestones and was in the process of potty training. The child attended day care where he participated in all activities and saw projects to completion. He was kind to his classmates, took care of his personal needs, and had healthy eating habits. Xavier did not display any behavioral or emotional issues. He was active, liked to play, and was not afraid to speak his mind. The child got along well with his half brothers and was happy. By February 2015, the N.s declared they wanted to adopt him.

At the contested six-month hearing (§ 366.21, subd. (e)) held in March 2015, the juvenile court continued reunification services. The court ordered George to participate in the equivalent of drug-rehabilitation aftercare with drug testing.

4. *The parents did not participate in court-ordered programs through the 12-month review period.*

Breanna had regular monitored visits on alternate weeks between March 3, 2015 and June 16, 2015. She reportedly interacted appropriately with the child who liked to play with her.

Otherwise, Breanna did not maintain contact with the social worker about her progress. More than a year after Xavier was detained, the Department still had received no documentation showing Breanna's participation in any court-ordered programs. Breanna missed six drug tests between March 19, 2015 and May 26, 2014. In the 12-month status review report filed mid-June 2015, the Department declared that Breanna was "in total non compliance" with her reunification case plan.

When George was no longer in custody, on May 19, 2015, he informed the Department that he was unemployed, resided in a church, and was planning to file for disability. Although he received a second list of referrals for programs, the Department received no evidence that George participated in or completed any of his case plan. George failed to appear for four more scheduled drug tests between March 26, 2015 and

May 13, 2015, after which date there was no evidence he participated in any substance abuse testing program.

George did not visit Xavier between March and early May 2015. On May 21, 2015, the two had a monitored visit at the Department's offices. George was described as "tight but was appropriate when communicating with child." George missed the next visit.

Neither parent appeared at the contested 12-month review hearing (§ 366.21, subd. (f)) in June 2015. Finding Breanna and George had only partially complied with their respective case plans, the juvenile court terminated reunification services and set the section 366.26 selection and implementation hearing.

On August 26, 2015, both George and Breanna entered a residential drug treatment program at Genesis Care and Teaching, My Father's House Ministries. The treatment center imposed a blackout period for the first month of residence, during which the parents were not permitted to have visitors. On September 24, 2015, George contacted the Department to arrange to visit Xavier.

5. *George's 11th-hour petition for modification*

George filed his petition for modification (§ 388) on October 29, 2015, the same day as the scheduled selection and implementation hearing. His petition sought to have Xavier placed with him, or alternatively to reinstate reunification services with frequent, liberal visitation. George cited as changed circumstances his entry two months earlier into the rehabilitation program Genesis, where he was actively participating in individual and group counseling, drug treatment education, parenting classes, 12-step meetings, and had randomly tested clean three times. Additionally, he and Breanna were married on September 4, 2015. George believed that Xavier could reside with him at Genesis where the three could receive family therapy. George claimed that the child was closely bonded with his parents and would benefit from reunification with George.

Attached to George's petition were three documents: (1) A letter entitled Official Notice Of Program Enrollment, reflecting George's entry on August 26, 2015 into Genesis' year long program; (2) a monthly chart indicating that George had completed

6

nine N/A meetings; nine 12-step sessions; nine individual sessions, five parenting education sessions, nine alcohol and drug education sessions, nine group counseling sessions, and nine individual counseling sessions; and (3) an Official Notice of Client's Progress dated October 28, 2015, reflecting said participation by father who was "consistently applying" himself. The Notice indicated George and Breanna had "on-going undocumented marriage sessions with Church Elders," and had three visits with Xavier, after which the child did not like leaving the parents behind. The program director suggested home visits with the child.

The juvenile court summarily denied George's section 388 petition without a hearing on the grounds George had not stated sufficient new evidence or change of circumstances; the proposed change of order did not promote the child's best interest; and return of the child to George's custody only two months into George's program was premature given the state of the record and pendency of the selection and implementation hearing.

6. *The section 366.26 selection and implementation ruling*

The Department reported in its section 366.26 status review report, that Xavier was doing well and displayed no behavioral issues. He was happy. The grandparents were willing to provide him with a safe and permanent home. They stated they loved him very much. Meanwhile, the parents' contact with the child had been "inconsistent" in the previous year and was always monitored in a neutral setting. Breanna started monitored visits on March 9, 2015 in a neutral setting on alternate weeks. George's visits were "sporadic due to incarceration and being transient." Neither parent had contacted the Department about visitation between June 2015 and September 24, 2015. The Department recommended that Xavier be adopted by the N.s. The adoption homestudy was approved in late October 2015.

At the contested selection and implementation hearing (§ 366.26), George testified that he had visited with Xavier once a week for two hours since his recovery program's blackout was lifted a month earlier. The two ran around, played games, read, or drew.

George told Xavier that he loved him. Xavier hugged George when he arrived and was "sad" at the end of the visits.

The certified chemical dependency counselor at Genesis, the Reverend Alfonso Larrinaga, testified that he was present at the four visits in October 2015. Larrinaga described the visits as typical of "how children are." Xavier "acted very respectful and . . . wait[ed] for the next word."

Breanna testified that before she went into her rehabilitation program in August 2015, she saw Xavier as her parents permitted, at least three or four times per week for a couple of hours per day. As soon as Xavier saw her, he was "so happy getting out of the car." He would run to Breanna and give her a big hug. She claimed that Xavier acted as if he wanted to be close to her. He was very affectionate with her and called her "mom" or "mommy." They played with play-dough, colored, and worked on shapes, colors, and writing Xavier's name. Once Breanna instructed the child about sharing. Breanna also claimed she went to Xavier's preschool "all the time." Breanna made the child lunch at least 90 percent of the time. In the month since the treatment program's blackout period ended on September 26, 2015, Breanna had had five visits with Xavier. At the end of visits, Xavier held on to Breanna and said that he wanted to see her.

The juvenile court terminated parental rights (§ 366.26) and selected a permanent plan of adoption. The court gave the N.s discretion to permit ongoing contact with the parents. Breanna and George separately appealed.

## CONTENTIONS

George contends that the juvenile court erred in summarily denying his section 388 petition. Breanna contends that the juvenile court abused its discretion in terminating her parental rights.

8

**DISCUSSION**

*1. The juvenile court did not err in summarily denying George's petition for modification (§ 388).*

Under section 388, George had the burden to show, by a preponderance of the evidence, a genuine change of circumstances or new evidence showing that reinstituting reunification services was in Xavier's best interest. (*In re Ramone R*. (2005) 132 Cal.App.4th 1339, 1348.) His burden was to "make a prima facie showing to trigger the right to proceed by way of a full hearing. [Citation.]" (*In re Marilyn H*. (1993) 5 Cal.4th 295, 310.) His petition must be liberally construed in favor of its sufficiency. (*In re Daijah T*. (2000) 83 Cal.App.4th 666, 672.) When determining whether the petition made the necessary showing, the court may consider the factual and procedural history of the case. (*In re Justice P*. (2004) 123 Cal.App.4th 181, 189.) " 'The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition.' [Citations.]" (*In re Brittany K*. (2005) 127 Cal.App.4th 1497, 1505.) "We review a summary denial of a hearing on a modification petition for abuse of discretion. [Citation.] Under this standard of review, we will not disturb the decision of the trial court unless the trial court exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination. [Citation.]" (*In re A.S*. (2009) 180 Cal.App.4th 351, 358.)

"Not every change in circumstance can justify modification of a prior order. [Citation.] The change in circumstances must relate to the purpose of the order and be such that the modification of the prior order is appropriate. [Citations.] In other words, the problem that initially brought the child within the dependency system must be *removed or ameliorated*. [Citations.] The change in circumstances . . . must be of *such significant nature* that it requires a setting aside or modification of the challenged order. [Citations.]" (*In re A.A*. (2012) 203 Cal.App.4th 597, 612, italics added.)

George has not met his burden. He contends he has shown prima facie a changed circumstance in that he is "involve[d] in the Genesis program." But, by his own admission, all he demonstrated was that he completed the first two of 12 months of drug

9

rehabilitation. George is a registered controlled substance offender with an entrenched substance abuse problem. He needs far more than a mere 60 days of sobriety to show any reform. (*In re Kimberly F*. (1997) 56 Cal.App.4th 519, 531, fn. 9 [120 days of sobriety not enough]; *In re Cliffton B*. (2000) 81 Cal.App.4th 415, 423 [father's seven months of sobriety insufficient to show changed circumstances]; *In re Mary G*. (2007) 151 Cal.App.4th 184, 206 [in the context of severe drug problem, three months of sobriety "was not particularly compelling"].) Liberally construed, George's petition shows only that circumstances were beginning to change, but not that his drug abuse had been removed or ameliorated. (*In re A.A*., *supra*, 203 Cal.App.4th at p. 612.)

Even if this evidence constituted a genuine change in circumstances, George failed to demonstrate how resuming reunification services and liberalizing visitation would be in Xavier's best interests. "The factors to be considered in evaluating the child's best interests under section 388 are (1) the seriousness of the problem that led to the dependency and the reason for any continuation of that problem; (2) the strength of the child's bond with his or her new caretakers compared with the strength of the child's bond with the parent; and (3) the degree to which the problem leading to the dependency may be easily removed or ameliorated, and the degree to which it actually has been." (*In re Ernesto R*. (2014) 230 Cal.App.4th 219, 224, citing *In re Kimberly F*., *supra*, 56 Cal.App.4th at pp. 531-532.) None of these factors weighs in George's favor. George has a longstanding problem with substance abuse and has only just begun the long process of obtaining real sobriety. Meanwhile, Xavier is thriving in the care of his grandparents, where he has been for the majority of his life. The N.s have provided a safe, stable, nurturing environment and are committed to adopting him. Xavier has bonded with the N.s while having had precious little interaction with George. Granting a section 388 petition would delay selection of a permanent home and not serve Xavier's best interests. (*In re Ernesto R*., at pp. 223-224.) " 'Childhood does not wait for the parent to become adequate.' " (*Id*. at p. 224)

2. *The juvenile court did not err in terminating parental rights.*

At the hearing under section 366.26, the juvenile court must order one of three dispositional alternatives: adoption, guardianship, or long-term foster care. The Legislature has declared a " '*strong preference* for adoption over the alternative permanency plans.' " (*In re Anthony B*. (2015) 239 Cal.App.4th 389, 395, italics added.) Once the juvenile court finds that the child is adoptable, a finding neither parent challenges, "the court *shall* terminate parental rights *unless*" the court "finds a compelling reason for determining that termination would be detrimental to the child due to" one of the six statutory exceptions. (§ 366.26, subd. (c)(1) & (c)(1)(B), italics added.) Stated differently, only " 'in *exceptional circumstances*,' " may the court " 'choose an option other than the norm, which remains adoption.' " [Citation.]" (*In re Anthony B*., *supra*, at p. 395.) As the parent, Breanna had the burden to prove by a preponderance of the evidence the application of a statutory exception to termination of parental rights. (*Ibid*.)

The exception to adoption on which Breanna relied is section 366.26, subdivision (c)(1)(B)(i), the so-called parental-relationship exception. This exception applies when the court finds that (1) "[t]he parents have maintained regular visitation and contact with the child *and* [ (2) ] the child would benefit from continuing the relationship." (*Ibid*., italics added.) A beneficial parent-child relationship "is one that 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' [Citation.]" (*In re Amber M*. (2002) 103 Cal.App.4th 681, 689.)

We review the juvenile court's determination whether a beneficial relationship exists for substantial evidence. (*In re Bailey J*. (2010) 189 Cal.App.4th 1308, 1314.) We review the juvenile court's determination whether the cited relationship constitutes a " 'compelling reason for determining that termination [of parental rights] would be detrimental' " for abuse of discretion. (*Id*. at p. 1315, italics omitted.)

Under the parental-relationship exception, courts "balance[ ] the strength and quality of the parent-child relationship in a tenuous placement against the security and

11

sense of belonging that a stable family would confer on the child." (*In re B.D*. (2008) 159 Cal.App.4th 1218, 1234–1235.) "[I]f severing the existing parental relationship would deprive the child of 'a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated.' [Citation. However], if an adoptable child will not suffer great detriment by terminating parental rights, the court must select adoption as the permanency plan. [Citation.]" (*In re Dakota H*. (2005) 132 Cal.App.4th 212, 229.) Thus, "[t]he juvenile court may reject the parent's claim simply by finding that the relationship maintained during visitation does not benefit the child significantly enough to outweigh the strong preference for adoption." (*In re Jasmine D*. (2000) 78 Cal.App.4th 1339, 1350.)

Observing that she met the first prong of the exception to adoption because the juvenile court found she had maintained regular and consistent visitation, Breanna contends the court abused its discretion in determining, as to the second prong, that the benefits of adoption outweighed Breanna's relationship with Xavier.[3] The court believed Breanna's testimony about her visits. Still, it is undisputed that in the 18 months since Xavier was detained, Breanna had *no contact* with him for six months, i.e., five months of incarceration and the one-month blackout period, or one third of the dependency.

More important, the parental-relationship exception is applied only when because of regular visits and contact, the parent has been able to occupy a "*parental role*" in relationship to the children any time during their lives. (*In re Beatrice M*. (1994) 29 Cal.App.4th 1411, 1419, italics added.) Under this exception, the parent-child contact must be more than "frequent and loving" (*id*. at p. 1418), or pleasant (*In re Elizabeth M*. (1997) 52 Cal.App.4th 318, 324). This relationship arises from the regular and constant

---

[3]     Breanna also argues that guardianship "is the better plan." However, because she does not challenge the juvenile court's finding that Xavier is adoptable, as explained, *ante*, adoption is the plan identified by the Legislature as mandatory absent an adequate showing of an exception to adoption. (*In re Anthony B*., *supra*, 239 Cal.App.4th at p. 395.)

interaction in which the adult tends to the child's needs for "physical care, nourishment, comfort, affection and stimulation. [Citation.]" (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)

Breanna failed to carry her burden. In her care, Xavier's life was so unstable and impermanent as to undermine the child's well-being. She abandoned this young child triggering the dependency. During the dependency she came in and out of his life because of her incarceration and drug abuse. Although Breanna was in a residential treatment program at the time of the section 366.26 hearing, she had only been there for two months. She had completed a drug program once before only to return to drug abuse and vanish, abandoning Xavier to the N.s, who have reliably cared for him. Otherwise, Breanna has not been sober for any sustained period and completed none of her case plan, supporting the conclusion that she remains unable to provide the child with stability and permanency. More important, viewing Breanna's testimony, her visits were always monitored; she had no overnight visits; she did not tend to Xavier's physical needs, and there is no testimony she provided him with comfort or stability. Rather than to occupy a parental role, or even the role of a babysitter, in Xavier's life, at best, Breanna and Xavier were good friends.[4] Yet, "[w]hile friendships are important, a child needs at least one parent. Where a biological parent . . . is incapable of functioning in that role, the child should be given every opportunity to bond with an individual who will assume the role of a parent." (*In re Brittany C.* (1999) 76 Cal.App.4th 847, 854.) The juvenile court did not

---

[4]    Breanna's reliance on D. E. Arredondo and L. P. Edwards, Attachment, Bonding, and Reciprocal Connectedness (2000) Journal of the Center for Families, Children & the Courts, at pages 109-127, is misplaced. She cites the article to argue that Xavier could be bonded to her and his grandparents at the same time. However, the issue here is not who has a bond with Xavier. The Legislature has expressed a strong preference for adoption and hence directed courts to order adoption as the permanent plan when a child is adoptable unless "[t]he court finds a *compelling* reason for determining that termination would be detrimental to the child." (§ 366.26, subd. (c)(1)(B), italics added.) The question the juvenile court must answer is whether the relationship Breanna maintained during visitation benefits the child "significantly enough to outweigh the strong preference for adoption." (*In re Jasmine D.*, *supra*, 78 Cal.App.4th at p. 1350.)

abuse its discretion in concluding, whatever relationship Breanna had with Xavier, it was not compelling enough to outweigh the Legislature's strong preference for adoption because of the stability, permanency, reliability, consistency, and safety that Xavier has with his grandparents.

**DISPOSITION**

The orders appealed from are affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



ALDRICH, J.


We concur:



EDMON, P. J.



HOGUE, J.*

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14